THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK *vs.* DEWITT C. LENT and others.

The rule, of general application, that the possession of personal property implies ownership, against the world, is exceptional in certain cases.

On the 2d of December, 1784, the common council of New York, from gratitude for the distinguished services of Gen. Washington, voted an address to him, together with the freedom of the city, in a gold box. At a subsequent meeting of the common council, on the 2d of May, 1785, the mayor produced and read a letter from Gen. Washington, in reply to the address, which was addressed to the "Honble. The Mayor, Recorder, Aldermen and Commonalty of the city of New York." By order of the common council, the address and reply were published, and entered upon the minutes. One A. was in possession of the letter in the year 1834, and continued to possess it until his death, in November, 1863, when it passed into the hands of his executrix, who, in May, 1864, placed it in the hands of auctioneers, by whom it was sold, at auction, to the defendant L. How A. became the possessor of the letter was not shown; nor did it appear that any offer was made by L. to show title, other than simple possession.

*Held* 1. That the letter was a particular and a peculiar species of property; and that its style, address and character as a response to a legislative act, should of itself be regarded as having imparted notice, to all, that from the moment of its reception and recording it became the property of the corporation to whom it was addressed.

2. That, unlike other personal property, which ordinarily possesses but little, if any, distinctive mark which might place individuals upon inquiry, this letter, so written, in such terms, and so addressed, held A. to constantly recurring notice of its ownership by the corporation.

3. That the evidence as to title to the letter was of that character which called for a finding by the jury thereon, and their finding in favor of the plaintiffs was conclusive between the parties.

APPEAL by the defendants from a judgment entered in favor of the plaintiff, upon the verdict of a jury, and from an order denying a motion for a new trial.

The action was brought to recover the possession of an autograph letter, written by General Washington, and addressed to the plaintiffs, in 1785, and which, in May, 1864, was sold at auction by the defendants, composing the firm of Bangs, Merwin & Co. to the defendant Lent.

It appeared in evidence that John Allan, in the year 1864, was in the possession of the letter, and that it con-

tinued in his possession until November 1, 1863, when he died, and the possession thereof passed to Margaret Stewart, his executrix, by whom it was placed in the hands of the above named auctioneers, to be sold at public auction, and it was sold by them to Lent, for the sum of $2050. On the 26th of October, thereafter, the plaintiffs demanded possession of the said letter, from the defendants, which was refused.

The jury found a verdict in favor of the plaintiffs, and assessed the damages for detention at six cents, and the value of the property at $2050.

*F. N. Bangs*, for the appellants.   I. The plaintiffs in this action, being the corporation called the Mayor, Aldermen and Commonalty of the city of New York, proved no past or present right of property in the letter.   1. The letter, if the property of any one besides the writer, belonged to those to whom it was addressed.   It was addressed to the Mayor, *Recorder*, Aldermen and Commonalty of the city of New York.   There was no such corporation in 1785, and the persons thus addressed were never subsequently incorporated by that name.   2. The evidence shows that the common council made no claim to be proprietors of the letter.   The mayor "produced" it—but it does not appear that he parted with the possession of it, nor that the common council ordered it to be preserved or put on file.   On the contrary, after having entered it at large in their minutes, they ordered it to be "published."   3. These facts, coupled with the ordinary course of business testified to by Mr. Valentine, amount to a disclaimer on the part of the corporation of any proprietary interest in the mere paper and ink constituting the letter, and warrant the conclusion that the corporation meant to content itself with the copy on its minutes, and abandon the original paper and ink to its actual possessor, or to chance; and therefore,   4. The court should have nonsuited the plain-

tiff, in accordance with the defendants' motion; and it erred in refusing to do so; and it should have charged the jury in accordance with the defendants' proposition, that there was no evidence to show that the letter ever came into the possession of the plaintiffs, or that the right of property was ever in them.

II. The proposition submitted by the defendants' counsel, that upon the undisputed facts the statute of limitations was a bar to the action, was sound, and the court erred in refusing so to charge, and it also erred in charging that if the letter came honestly into Allan's possession, by loan or otherwise, without coming to any ownership at the same time, then the action might be maintained. 1. One undisputed fact was, that Allan had been in possession for thirty years, *claiming title to the letter as its absolute owner*, from time to time openly showing the letter as his own to various members of the corporate body. 2. Assuming it to be a true and just inference from these facts, (as the jury have found it to be,) that Allan's taking of the letter was by permission of the corporation, in the character of a borrower or bailee, then his assertion of title was an act which, without demand, constituted a right of action against which the statute of limitations began to run. (*Murray* v. *Burling*, 10 *John.* 172. *Lockwood* v. *Bull*, 1 *Cowen*, 322. *Connah* v. *Hale*, 23 *Wend.* 466. *Mitchell* v. *Williams*, 4 *Hill*, 13. *Carroll* v. *Cone*, 40 *Barb.* 220. *Davison* v. *Donadi*, 2 *E. D. Smith*, 121.)

III. The court having been requested by the defendants' counsel to charge the jury that if Mr. Allan came *lawfully* into possession of the letter, the statute of limitations was a bar to the action, and the court having answered, " there is no question about that," and the court having also charged the jury that if Allan became *wrongfully* possessed of the letter, the action was defended, the verdict must be deemed to have negatived the idea that his possession was either rightful or wrongful, which is an absurdity, and the

verdict is against both the law as so stated, and against the evidence.

IV. The court erred in refusing to charge the jury, as requested, that by the evidence Allan came into possession of the letter lawfully and became the owner thereof. 1. The plaintiffs had averred that the letter had been taken from them wrongfully; but there was no direct evidence that that was so, while the proof was that a taking for the purpose of publication was expressly authorized by the common council, and the jury had no right to assume, without evidence, that Allan or his predecessor in the possession had purloined the letter. 2. The answer which was read in evidence, averred that he came lawfully into possession, and was the owner, and there was no evidence to contradict it.

V. There was, in fact, nothing to submit to the jury, the evidence not being contradictory, and it being the duty of the court to apply the presumptions of law arising from the evidence, even if the answer was not decisive. 1. To leave it to a jury to determine whether Allan's possession originated in theft, purchase or loan, without any thing to guide them to a definite conclusion, (if the evidence furnished by the answer is rejected,) is to substitute mere conjecture for the rational processes of the mind, and to put the rights of a suitor at the mercy of mere chance. Any verdict would have been consistent with the evidence, if the present one is, and it is impossible to tell what directed the minds of the jury to the theory which they seem to have adopted. In such a case, presumptions which are safe, and in accordance with the nature of things and the ordinary course of events, are wisely substituted by the law for mere speculation and conjecture. (*Starkie on Evidence, vol.* 2, *part* 2, *tit. Prescription, p.* 904. *Schauber* v. *Jackson,* 2 *Wend.* 37, 38.) 2. The possession of John Allan for thirty years raised a legal presumption that he had a lawful transfer of title

from the former owner. (*Eyre* v. *Higbee*, 35 *Barb.* 502.) 3. It is more reasonably likely that the corporation by some lawful means, parted with their title to the letter, knowingly and intentionally, than that they either loaned it to John Allan, or that he stole it. They were more likely to give it away or abandon it, or to sell it, or to permit it to be sold under execution, than to loan it. 4. If, for an assumed want of corporate power to sell or give away the letter, the presumption is inapplicable to this case, then the only other presumption must be that it was parted with by some officer or agent of the corporation in breach of his duty, which, of itself, constituted a conversion and created a right of action existing more than thirty years ago, and now barred by the statute of limitations. 5. If thirty years' possession of personal property does not create a presumption of a title by grant, or of an actionable conversion, where is to be the end of replevin suits? 6. The court erred in its various refusals to charge as requested by the defendants' counsel.

*Richard O'Gorman,* for the respondents. I. The first exception appears on page 11, where the counsel for the appellants moved to dismiss the complaint upon two distinct grounds, namely: 1st. That there was no evidence that the respondents had any right of property to the letter. 2d. That there was no evidence that it was ever in their possession, and, *if it was,* there was not a sufficient foundation for a replevin suit in 1864. The first ground is disposed of by the sworn answer of the defendants, where they admit "upon information and belief, that on or about the second of May, 1785, the said letter was in the hands of the person then holding the office of mayor of the plaintiffs, and was by him produced at a common council held at the almshouse in the city of New York, on the second of May, 1785." It is established by the admission of the appellants and by the evidence, that such a letter was

written by General Washington, in reply to the address referred to, and that it was directed to "The Mayor, Recorder, Aldermen and Commonalty of the city of New York," by the executive officer received, read, and entered upon the minutes. . Can it be seriously questioned that the letter became and continued the property of the respondents, without evidence is adduced, showing some disposition of it by them? The answer to that portion of the motion to. dismiss the complaint which rests upon the concession that though the letter was in the possession of the respondents, yet that fact was not a sufficient foundation "for a replevin suit in 1864," is that, until the public sale of the letter in 1864, there is nothing to show that the respondents had any knowledge, express or implied, that the same was not in their actual possession.

II. The exception, is not well taken, because the mere notoriety of possession, twenty years before, did not make the title to the letter, or establish ownership.

III. The letter itself from its address and its subject matter, imparted notice to Allan and to the world, that it was peculiarly the property of the corporation.

IV. The request to charge, that there was no evidence to show that the letter ever came into the possession of the plaintiffs, or that the right of property was ever in them, was properly refused, because of the admission in the answer and the evidence in the case; but the court left it to the jury to determine, as a fact, whether the corporation had the title and possession; and the jury found that it had.

*First.* The justice properly refused to charge that the statute of limitations was a bar to the action, but he did charge, that if Allan "obtained the letter improperly, and with the intent to convert it to his own use, wrongfully; then his suit is defensible because the conversion took place more than thirty years ago, and the action should have

been commenced within six years of that time in order to enable the plaintiffs to recover."

V. The defendants' counsel asked the court to instruct the jury that by the evidence Allan came into possession lawfully and became the owner thereof. This request was very properly declined, and for the reasons first, there was no evidence offered showing how Allan became possessed of it; and, secondly, this was a fact to be found by the jury, and was by the justice submitted to them.

*Second.* The justice charged that if the letter came honestly into the possession of John Allan, by loan or otherwise, without obtaining any *ownership* at the same time, then that this action was maintainable. The jury have, by their verdict, affirmed that to be the state of facts.

*Third.* The statute of limitations then has no application, because a demand by the corporation for the letter, and its refusal, revived the ownership thereof in them, and authorized the bringing of this action.

VI. It does not appear in evidence that the corporation had any knowledge or discovered that the letter was out of their possession, until the time of the demand and refusal, namely, on the 26th of October, 1864. This action, it appears, was brought within six years after such knowledge and discovery.

BARNARD, P. J. The facts established in this case are few, and in themselves are not the subject of dispute. On the 2d December, 1784, the common council, imbued with emotions of gratitude for the distinguished services of General Washington, voted an address to him, together with the freedom of the city, in a gold box. At a subsequent meeting of the common council, held on the 2d May, 1785, the mayor produced and read a letter from General Washington replying to the address of the corporation, which was addressed to the "Honble. The Mayor, Recorder, Aldermen and Commonalty of the city of New

York," and subscribed by " Geo. Washington." By order of the common council the address and the reply were, published and entered upon the minutes. One John Allan had the letter in his possession about thirty years before the trial of the action, and at his death it passed into the hands of his daughter, who claimed possession up to the period of its sale, on the     day of May, 1864, when, as alleged, it became the property, by purchase, of the defendant Lent. How. Allan became the possessor of the letter, is in no way shown by the evidence; nor does it appear that any offer was made on behalf of the defense to show title, other than simple possession.

The learned justice who tried the cause, charged the jury, " If there was any way in which the common council could deprive themselves of their interest in the letter and pass it to him, you will ascertain whether it is so, and you will determine whether, when he became possessed of it, he became so possessed lawfully or unlawfully."

The justice further charged, " Did the deceased, John Allan receive this paper as owner of it, when he did receive it, or did he not? If he received it as owner, and was owner of it at the time, of course this suit is defended ; or if he obtained it improperly, and with the intent to convert it to his own use wrongfully, then this suit is defended, because the conversion took place more than thirty years ago, and the action should have been commenced within six years of that time to enable the plaintiffs to recover. If, on the other hand, you believe he acquired it honestly, by loan or otherwise, without acquiring an absolute property in it, at the time he received it, then the plaintiffs are entitled to recover."

We are unable to discover any error in these, the substantial portions of the justice's charge, and the questions involved having been fairly submitted to the jury, and they having found a verdict for the plaintiffs, we must conclude that in so finding they determined that Allan did acquire

the custody of the letter honestly, without acquiring an absolute property in it.

The rule of general application, that the possession of personal property implies ownership against the world must be regarded as exceptional in certain cases.

In the present action the letter was a particular and peculiar species of property. Its style, address and responsive character to a legislative act, should of itself be regarded as having imparted notice to all, that from the moment of its reception and sending it became the property of the corporation to whom it was addressed.

Unlike other personal property, which ordinarily possesses but little, if any, distinctive mark which might place individuals upon inquiry, this letter, so written, in such terms, and so addressed, held Allan to constantly recurring notice of its ownership by the corporation.

His possession was wholly unexplained, and the jury have charitably found that he had become possessed of it, but without title by any alienation from the corporation who were originally and rightfully its possessors and owners.

No notice is shown to have been at any time given to the corporation of the possession by Allan. Had such notice been shown, the statute of limitations by appropriate lapse of time might have had application.

The judgment should be affirmed, with costs.

INGRAHAM, J. I concur in affirming the judgment upon the ground that the evidence as to title to the letter was of that character which called for a finding by the jury thereon; and such finding in favor of the plaintiffs is conclusive between the parties.

SUTHERLAND, J. (dissenting.) From lapse of time, Washington's letter, the subject of this action, has become valu-

able as an article of virtue. It seems that it brought $2050 at auction, in 1864. But it is not at all probable that "The Mayor, Recorder, Aldermen and Commonalty of the city of New York," to whom the letter was addressed in 1785, viewed it or treated it as property.

The evidence is, that at a meeting of the common council, on the 2d of May, 1785, the mayor produced the letter; that the letter was transcribed into the minutes of the common council, and ordered to be published, with the address to which the letter was an answer. This was all the evidence to show property in, or possession of, the letter. The presumption from the evidence is, that the letter and address were sent to the printer to be published, and that they were published, and the further presumption is that, having been transcribed into the minutes, and published, no importance was attached to the preservation of the original letter by the city authorities, and that it never came back from the printer.

Upon the evidence which has been stated, the plaintiffs rested their case, to recover the possession of the letter from the defendants, the auctioneers, in whose possession the letter was found, in 1864, nearly eighty years after the transaction as to the letter in 1785.

I doubt, under the circumstances, whether the evidence was sufficient to show property in the plaintiffs. At all events I doubt whether the evidence was sufficient to rebut the presumption, that the defendants, the auctioneers, were lawfully in possession, and as owners, or as agents of the party for whom they sold the letter as owner, viewing the letter as property.

But it is not necessary to put our decision of this case on the ground of any defect or deficiency in the proofs of the plaintiffs, or upon the *prima facie* evidence of ownership from the bare possession, at the time the plaintiffs made the demand of the letter. The evidence on the part of

the defendants was express and undisputed, that Mrs. Stewart, the daughter and executrix of one John Allan, placed the letter in the hands of the auctioneers for sale; that he was a collector of rare manuscripts and literary curiosities; that he had a large collection of such articles; that at the time of his death, in 1863, he had been in possession of the letter for thirty years and upwards, exhibiting it to various, persons from time to time, as his own.

It was a presumption of law, I think, from this undisputed evidence of long interrupted adverse possession, not only that John Allan was the owner at the time of his death, but also that the letter came into his possession lawfully and as owner. No doubt the plaintiffs might have rebutted this presumption by showing that John Allan got possession unlawfully, by a larceny, trespass, fraud or wrongful conversion; but if this could be shown, and had been shown, the statute of limitations would have been a bar to the action. I assume, too, that the plaintiffs might have rebutted the legal presumption, by showing that John Allan's possession commenced as a permissive possession; that the letter had been lent to him, or put in his hands to keep for the plaintiffs; but there was no such rebutting evidence.

There was nothing, then, to submit to a jury. It is plain that the judge, by submitting the case to the jury as he did, deprived the defendants of the benefit of the legal presumption that John Allan was the owner at the time of his death, and that his right and title commenced as owner.

If the letter is property, it must be treated as property; and the plaintiffs must prosecute their action, under and subject to the legal presumptions arising from long continued, uninterrupted adverse possession, founded on principles of public policy, to quiet possession, and to prevent

the necessity of inquiries as to the origin of right, title, or possession, like those submitted to the jury in this case.

I think the judgment should be reversed, and a new trial ordered, with costs to abide the event of the action.

Judgment affirmed.

[NEW YORK GENERAL TERM, January 6, 1868. *Geo. G. Barnard, Ingraham* and *Sutherland*, Justices.]